UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 05 CR 472 |
| ) | Hon. John W. Darrah |
| ROBERT VALLAR ) | |

## MEMORANDUM OPINION AND ORDER

On May 25, 2005, the United States of America (the "Government") brought a criminal indictment against Defendant Robert Vallar and other alleged members of an international drug smuggling organization, charging them with conspiring to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. § 846. Presently before the Court is Defendant Vallar's Motion to Suppress Evidence. The parties submitted briefs; and on March 22, 2006, this Court held an evidentiary hearing on Defendant Vallar's Motion to Suppress Statements. At the evidentiary hearing, Special Agent Mike Zobak of the Drug Enforcement Administration and Defendant Vallar testified. For the reasons that follow, Defendant Vallar's Motion to Suppress is denied.

## BACKGROUND

The Government's version of events, as provided through the testimony of Agent Zobak, is as follows:

Defendant Vallar was arrested in the early morning hours of May 26, 2005. Approximately nine special agents participated in Defendant Vallar's arrest. Upon arrest, when

-1-

Defendant Vallar was still in his home, Defendant Vallar was placed in handcuffs. Defendant Vallar was not given his *Miranda* warnings while he was within his residence.

Defendant Vallar was asked about the presence of narcotics, money, or guns in the home, was asked whether there were other people in the home at the time, and was asked whether there was anything in his home that would pose a risk to officer safety. Defendant Vallar was asked no other questions while he was in his home. After Defendant Vallar was taken into custody, during a "protective sweep" of the house, Special Agent Zobak's weapon was drawn. Other agents may have had their guns drawn during the arrest. No one threatened Defendant Vallar at his arrest.

Defendant Vallar was transported to 219 South Dearborn Avenue in Chicago, Illinois for questioning. The ride took approximately thirty minutes. During the ride to 219 South Dearborn, Special Agent Zobak talked to Defendant Vallar about horse racing. Agent Zobak responded to Defendant Vallar's questions about why his vehicle had been seized.

After arriving at 219 South Dearborn at approximately 8:00 a.m., Defendant Vallar was offered the use of the restroom and was offered a beverage. Defendant Vallar declined both offers.

Prior to questioning, five or six audio tapes of intercepted calls were played in the presence of Defendant Vallar. Defendant Vallar was advised by an agent that was "involved in this investigation, here are the tapes, other people have been arrested." Defendant Vallar was then read his *Miranda* warnings, and he signed an advice of rights form. Agent Zobak witnessed Defendant Vallar sign the *Miranda* waiver form, and Defendant Vallar expressed no confusion after being read the contents of the form. Defendant Vallar was then interviewed.

Defendant Vallar was permitted to use the bathroom during the interview. After returning from a trip to the restroom, Defendant Vallar invoked his right to remain silent.

Defendant Vallar also testified at the evidentiary hearing. Defendant Vallar's version of events is as follows:

On the morning of May 26, 2005, Defendant Vallar answered the door at his house and was met by four or five agents with drawn guns. The agents ordered him to "get down." Defendant Vallar was handcuffed, and agents loudly asked where certain items were and threatened to "tear this mother down." Defendant Vallar told the agents that his female companion was in the house, and he showed them where a gun was located. While at his house, an agent "was rubbing [Defendant Vallar] like he want [sic] to make love, okay," and also began "rubbing" Defendant Vallar with a flashlight. An agent also asked Defendant Vallar if he knew "Juan Carlos." One of Defendant Vallar's Co-Defendants is named Juan Carlos Iniguez. Defendant Vallar stated that he did not, but he knew a man by the name of Carlos. Defendant Vallar was asked how long he knew Carlos. Defendant stated that he met him at a flea market.

Defendant Vallar was then transported to 219 South Dearborn. After his arrival downtown, Defendant Vallar was offered a beverage. Defendant Vallar also visited the restroom. After his second visit to the restroom, Agent Zobak informed him, "What I write up is what goes before the judge, so either you're going to play ball with us or else. You're going to play balls anyways." Then Agent Zobak slapped Defendant Vallar on the back of the head.

Defendant Vallar was not advised of his rights. Defendant Vallar stated that he signed the advice of rights form that bears his signature because he was told that it was a standard form

-3-

that had information about his property (i.e., keys, wallet, clothes) and because Special Agent Mike Mahoney was rubbing him "like I was a woman or something, and it came to my mind about that deal in New York there that happened to a man that got sodomized with that broken broomstick, and I was like just wanting to get away from them." Defendant Vallar did not read the form he signed.

## LEGAL STANDARD

A statement is not compelled within the meaning of the Fifth Amendment if an individual "voluntarily, knowingly and intelligently" waives his Constitutional privilege. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). "A confession is voluntary if, in the totality of the circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. Coercive [government] activity is a necessary predicate to the finding that a confession is not voluntary withing the meaning of the Due Process Clause of the Fourteenth Amendment." *United States. v. Gillaum,* 372 F.3d 848, 856-57 (7th Cir. 2004) (*Gillaum*) (internal citations and quotations omitted). In applying the totality-of-the-circumstances test, a variety of factors may be considered, including but not limited to: whether the defendant was read his *Miranda* rights; the individual characteristics of the defendant (i.e., defendant's age, education, intelligence level, and mental state); the nature of the interrogations (i.e., duration, environment, access to restroom and food); and the conduct of the law enforcement officers (i.e, use of physical punishment). *Conner v. McBride,* 375 F.3d 642, 651 (7th Cir. 2004) (collecting cases).

"[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *see also United States v. Guerrero-Herrera*, 590 F.2d 238, 242 (7th Cir. 1978). When a defendant claims that his statement was taken in violation of his rights under *Miranda*, the government need only prove the defendant waived *Miranda* rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Defendant Vallar also alleged that he was subjected to sequential interrogation in violation of the rule announced in *Missouri v. Seibert*, 542 U.S 600 (2004) (*Seibert*). In *Seibert*, the Supreme Court condemned the practice of a two-step interrogation strategy that called for the deliberate withholding of *Miranda* warnings until the suspect's confession, followed by *Miranda* warnings, and then using Defendant Vallar's pre-*Miranda* statements to elicit the pre-*Miranda* confession. *See also United States v. Stewart*, 388 F.3d 1079, 1086-90 (7th Cir. 2004).

## ANALYSIS

The gravamen of Defendant Vallar's Motion to Suppress is his allegation that his *Miranda* waiver was not voluntary because he was subject to coercive tactics during his interrogation, without being advised of his rights, while he was handcuffed and restrained in his residence for at least one hour, again during his transportation to 219 South Dearborn, and inside when he listened to tapes of intercepted phone calls. Second, Defendant Vallar alleges that he was subjected to sequential interrogation within the meaning of *Missouri v. Seibert*, 542 U.S. 600 (2004).

Here, based on the totality of the circumstances, the Government carried its burden of demonstrating that Defendant Vallar voluntarily, knowingly, and intelligently waived his rights. The evidence showed that Defendant Vallar was capable of understanding his rights: he is a 63-year-old man who possessed a ninth grade education, and he can speak and read English. Agent Zobak testified that Defendant Vallar had been informed of his *Miranda* rights aloud prior to the initiation of questioning, and he observed Defendant Vallar sign the advice of rights form. Defendant Vallar's testimony – when considered in light of the totality of the circumstances, including the credible testimony by Agent Zobak – supports a finding by a preponderance of the evidence that Defendant Vallar voluntarily, knowingly and intelligently waived his *Miranda* rights.

The Government asserts that Defendant Vallar was not subjected to sequential interrogation pursuant to *Missouri v. Seibert* because he was not asked questions concerning the crime prior to being read his *Miranda* warnings. Agent Zobak's testimony in this regard is credible and unimpeached and supports a finding contrary to Defendant Vallar's contention. Even if Defendant Vallar's testimony were credible in this regard, it appears that Defendant Vallar did not give any information regarding the investigation prior to receiving his *Miranda* warnings.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is denied.

Dated: April 27, 2006

JOHN W. DARRAH
United States District Court Judge